1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOUSTON GENERAL INSURANCE CO., | CASE NO. C11-2093MJP |
| Plaintiff, | ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE UNTIMELY FILINGS |
| v. | |
| FARMINGTON CASUALTY CO. and ST. PAUL FIRE & MARINE INSURANCE CO., | |
| Defendants. | |

This matter comes before the Court on Defendants' motion for summary judgment re: untimely suit filings. (Dkt. No. 54.) Having reviewed the motion, Plaintiff's response (Dkt. No. 59), Defendants' reply (Dkt. No. 69), and all related filings (Dkt. Nos. 55, 56, 57, 58, 60, 61, and 62), the Court DENIES the motion.

**Background**

This case is a claim for contribution by one property insurer, Plaintiff Houston General Insurance Company ("Houston"), against two other property insurers, Defendants Farmington

1   Casualty Company ("Farmington") and St. Paul Fire & Marine Insurance Company ("St. Paul").

2   (Dkt. No. 59 at 1.) The parties to this action provided property insurance policies to the Lakewest

3   Home Owners Association ("Lakewest"), covering the Lakewest Condominium in Seattle. (Id. at

4   2.) In 2005, Lakewest discovered that the deck framing in certain locations of its building was

5   extremely damaged due to hidden decay. (Id. at 3.) Further investigation led Lakewest to file suit

6   in state court in 2007 against numerous insurers who covered the building between 1989 and

7   2006. (Dkt. No. 57 at 3.) The suit described "severe damage within the condominium's walls,"

8   including the alleged collapse of parts of the building due to hidden decay, and general water

9   damage due to weather conditions. (Id.)

10      Defendant Farmington issued property insurance to Lakewest for the period March 22,

11   1992, to March 22, 1993. (Dkt. No. 57 at 2.) The Farmington policy includes a provision that

12   states that any legal action must be "brought within 2 years after the date on which the direct

13   physical loss or damage occurred." (Id.) Defendant St. Paul issued property insurance to

14   Lakewest for the period Oct. 1, 1995 to Oct. 1, 2000. (Id.) The St. Paul policy includes a

15   provision that states, "Any lawsuit to recover on a property claim must begin within 2 years after

16   the date on which direct physical loss or damage occurred." (Id.)

17      Plaintiff Houston, through its then-subsidiary, Traders & Pacific Insurance Company

18   ("Traders"), insured Lakewest from March 22, 1993 to Oct. 1, 1994. (Dkt. No. 59 at 2.) Before

19   1998, Houston and Traders were both owned by a parent company, Tokio Marine and Fire

20   Insurance Company ("Tokio"). (Dkt. No. 57 at 2.) In 1998, Tokio sold Houston to another

21   insurer, One Beacon. (Id. at 2-3.) In 2005, Houston sold Traders to another company, Endurance

22   Insurance, but retained the liabilities under the prior insurance policies. (Id. at 3.)

23

24

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT RE UNTIMELY
FILINGS- 2

1    The present controversy began the week of August 1, 2005, when Lakewest made seven

2    holes in the stucco siding of the Lakewest Condominium, which revealed that deck framing in

3    certain locations was extremely damaged due to hidden decay. (Dkt. No. 59 at 3.) After

4    conducting further testing in 2005 and 2006, Lakewest tendered claims to numerous insurers,

5    including Farmington and St. Paul. (Id.) Lakewest also attempted to tender a claim under the

6    Traders policy, but mistakenly tendered it to Tokio, Traders' former parent company. (Id.)

7    Neither Farmington, Traders, nor St. Paul accepted coverage, and on May 21, 2007, Lakewest

8    filed suit in King County Superior Court against these insurers and others to obtain coverage.

9    (Id.)

10    Plaintiff Houston was not a party to the King County lawsuit, because Lakewest

11    mistakenly named Tokio as the defendant responsible for the Traders policy. (Id.) On Oct. 18,

12    2007, Lakewest obtained a default judgment against Tokio for its alleged liability under the

13    Traders policies. (Id.) The total judgment was more than $7.5 million, representing the full cost

14    to repair all damage to the Lakewest Condominium, plus attorney fees. (Id.) When Tokio learned

15    of the default judgment, it appeared and filed a motion to vacate on Dec. 1, 2008. (Id.) On Dec.

16    11, 2008, King County Superior Court vacated the default judgment. (Id. at 4.) The judgment

17    was not reinstated until June 1, 2010, in an unpublished opinion by the Washington Court of

18    Appeals. (Id.; see Lakewest Condo. Owners Assoc. v. Tokio Marine & Nichido Fire Ins. Co.,

19    Ltd., 156 Wn. App. 1016 (June 1, 2010).)

20    A few months later, on Sept. 15, 2010, Tokio settled with Lakewest for a final amount of

21    $6 million. (Id.) As Houston was the entity liable under the Traders policies, not Tokio, Houston

22    paid the entire $6 million settlement directly to Lakewest on Oct. 14, 2010. (Id.) Tokio and

23    Houston continued to pursue Lakewest's claims against Farmington, St. Paul, and others as

24

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT RE UNTIMELY
FILINGS- 3

1   assignees of Lakewest, in the same King County lawsuit. (Id.) In order to move the action to

2   federal court and correct the parties, the King County lawsuit was dismissed by stipulation of the

3   parties on Aug. 11, 2011. (Id. at 5.) Houston had already filed its complaint against Farmington

4   and St. Paul in the instant lawsuit on Aug. 5, 2011. (Id.)

5     Defendants now move for summary judgment on all Plaintiff's claims. (Dkt. No. 57.)

6   Defendants assert that Plaintiff's contribution claim is barred because Plaintiff and Defendants

7   do not share a common liability to the insured, since the insured's state court action has been

8   dismissed and the present action was filed after the two-year suit limit in Defendants' policies.

9   (Id. at 1.) Defendants also assert that Plaintiff's contribution claim is barred by Washington's

10  three-year statute of limitations, because Plaintiff Houston's cause of action accrued no later than

11  October 2007, when a default judgment was entered establishing liability under the Traders

12  policy, and the present suit was not filed until August 2011. (Id.)  Defendants finally assert that

13  Plaintiff's subrogation claim is barred by the policies' two-year contractual suit limit, but

14  Plaintiff clarifies in its opposition brief that it does not bring a subrogation claim in the present

15  action. (Id.; Dkt. No. 59 at 6.)

16              **Discussion**

17   A.   Legal Standards

18    Federal Rule 56 states the court shall grant summary judgment if the movant shows there

19  is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

20  law. Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of

21  demonstrating the absence of a genuine issue of fact for trial. Celotex Corp. v. Catrett, 477 U.S.

22  317, 323 (1986). In assessing whether a party has met its burden, the court views the evidence in

23  the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052,

24

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT RE UNTIMELY
FILINGS- 4

1   1056 (9th Cir. 1995). On a motion for summary judgment, all reasonable inferences are drawn in

2   favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

3        A federal court sitting in diversity applies the substantive law of the state, including the

4   state's statute of limitations. Albano v. Shea Homes Ltd. P'ship, 634 F.3d 524, 530 (9th Cir.

5   2011.) Federal courts must also abide by a state's tolling rules, which are integrally related to

6   statutes of limitations. Id. In determining the law of the state for purposes of diversity, a federal

7   court is bound by the decisions of the highest state court. Harvey's Wagon Wheel, Inc. v. Van

8   Blitter, 959 F.2d 153, 154 (9h Cir. 1992).

9      B.  Two-Year Contractual Suit Limit

10        The present case is not barred by the time limits in Defendants' insurance policies

11   because the insured filed suit within two years of when the damage to the Lakewest

12   Condominium was discovered, and the insured's suit against Defendants was ongoing when

13   Plaintiff settled with the insured. The insurance policies issued by both Defendants require

14   actions to be brought "within 2 years after the date on which the direct physical loss or damage

15   occurred." (Dkt. No. 57 at 7.) The Washington Supreme Court has directly addressed the issue of

16   how to interpret contractual suit limits that count from after a loss "occurs." Panorama Vill.

17   Condo. Owners Ass'n Bd. Of Directors v. Allstate Ins. Co., 144 Wash. 2d 130, 133-34 (2001)

18   (en banc).

19        In Panorama, the Washington Supreme Court held that, "Where a policy protects against

20   risk of direct physical loss from hidden decay and requires the insured to bring suit within one

21   year after a loss occurs, the date of the loss is the earlier of either (1) the date of actual collapse

22   or (2) the date when the decay which poses the risk of collapse is no longer obscured from

23   view." Id.  Panorama is directly on point; the only difference is that the contractual suit limit in

24   Panorama was one year, while here it is two years. Id. The decay of the Lakewest building was

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT RE UNTIMELY
FILINGS- 5

1   first visible the week of Aug. 1, 2005, when Lakewest first made limited test holes in the stucco.

2   (Dkt. No. 59 at 9.) Therefore, Lakewest's original state court suit was timely when it was filed

3   on May 21, 2007, less than two years later. (Id.)

4        Despite the fact that the state court suit was dismissed and re-filed in federal court,

5   Plaintiff's claim for equitable contribution is not barred by Defendants' contractual suit limits,

6   because Defendants shared a common liability with Plaintiff when Plaintiff settled with the

7   insured. Equitable contribution refers to the right of one party to recover from another party for a

8   common liability. Mut. of Enumclaw Ins. Co. v. USF Ins. Co., 164 Wn.2d 411, 419 (2008). In

9   the context of insurance law, contribution allows an insurer to recover from another insurer

10  where both are independently obligated to indemnify or defend the same loss. Id. "Importantly,

11  contribution is a right of the insurer and is independent of the rights of the insured." Id., citing

12  Signal Cos., Inc. v. Harbor Ins. Co., 27 Cal. 3d 359, 369 (1980) ("The reciprocal rights and

13  duties of several insurers who have covered the same event do not arise out of contract, for their

14  agreements are not with each other . . . .").

15       In deciding whether one insurer is liable for equitable contribution to another, the inquiry

16  is whether the nonparticipating coinsurer had a legal obligation to provide a defense or indemnity

17  coverage for the claim or action prior to the date of settlement. Mut. Of Enumclaw, 164 Wn.2d at

18  420 (citations omitted). While "[e]quity provides no right for an insurer to seek contribution

19  from another insurer who has no obligation to the insured," the existence of an obligation is

20  measured at the point the insurer seeking contribution settles with the insured. Id. The facts here

21  are clear. Defendants were timely sued by the insured in state court in May 2007, and that suit

22  was ongoing when Tokio settled for $6 million on Sept. 15, 2010, and when Plaintiff Houston

23  paid Lakewest on Oct. 14, 2010. (Dkt. No. 59 at 11.)

24

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT RE UNTIMELY
FILINGS- 6

1    The fact that Tokio settled the suit that was mistakenly brought against it and Houston

2   paid simply reflects the correct assignment of responsibilities under the Traders policy. (Id.) The

3   Court's analysis of equitable remedies is the same. At the time of settlement, the nonparticipating

4   coinsurers shared with Plaintiff a common legal obligation to the insured. The fact that Lakewest

5   could not recover directly from Defendants after the state court action was voluntarily dismissed

6   in August 2011 has no bearing on Defendants liability for contribution to Houston, because

7   Defendants legal obligation to Plaintiff arose before Tokio's settlement with Lakewest and

8   Houston's payment to Lakewest. See Mut. of Enumclaw, 164 Wn.2d at 420.

9       C.   Status of Subrogation Claim

10    Defendants assert that Plaintiff no longer has a valid claim for subrogation, because "[a]n

11   insurer entitled to subrogation stands in the shoes of the insured and is entitled to the same rights

12   and subject to the same defenses as the insured." Mut. of Enumclaw, 164 Wn.2d at 424 (citations

13   omitted). However, the Court need not reach this issue because Plaintiff explains in its

14   opposition brief to the present motion that it does not seek subrogation in the present suit, only

15   contribution. (Dkt. No. 59 at 6 ("Houston has not asserted any of Lakewest's rights in this action

16   by way of subrogation.").) While Plaintiff's complaint is ambiguously worded—"This is an

17   action in the nature of equitable contribution and/or subrogation"—the Court construes this case

18   as a contribution action and not unnecessarily decide issues that are not before it.

19       D.   Three-Year Statute of Limitations

20    Equitable contribution actions are subject to Washington's three-year statute of

21   limitations. RCW 4.16.080(3); Universal Underwriters Ins. Co. v. Security Indus., Inc., 391 F.

22   Supp. 326 (W.D. Wash. 1974). A statute of limitations begins when the cause of action accrues.

23   Malnar v. Carlson, 128 Wn.2d 521, 529 (1996). Under Washington law, "indemnity actions

24

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT RE UNTIMELY
FILINGS- 7

1  accrue when the party seeking indemnity pays or is legally adjudged obligated to pay damages to

2  a third party." <u>Central Wash. Refrigeration, Inc. v. Barbee</u>, 133 Wn.2d 509, 517 (1997).

3          The present case is timely regardless of which date is used. Plaintiff paid Lakewest on

4  Oct. 14, 2010, and the present action was filed in this Court on Aug. 5, 2011, well within the

5  three-year limit. Defendants urge the Court to instead use the date default judgment was entered

6  against Tokio—Oct. 18, 2007—as the date the present cause of action accrued, because that was

7  the date when Tokio was legally adjudged obligated to pay. (Dkt. No. 57 at 13.) However, this

8  argument fails for two reasons. First, the default judgment was entered against Tokio, which had

9  sold Houston nine years earlier, and was not responsible for the Lakewest claim. (<u>Id.</u> at 2-3.)

10  Houston was not even a party to the lawsuit where the default judgment was entered. (Dkt. No.

11  59 at 12.)

12          More importantly, the three-year statute of limitations did not expire here because the

13  October 2007 default judgment against Tokio was vacated in December 2008 and not reinstated

14  until June 2010. (<u>Id.</u> at 4.) "A judgment which has been vacated is of no force or effect and the

15  rights of the parties are left as though no such judgment had ever been entered." <u>Sutton v.</u>

16  <u>Hirvonen</u>, 113 Wn.2d 1, 9 (1989), quoting <u>In re Estate of Couch</u>, 45 Wn. App. 631, 634 (1986).

17  The present action is therefore not barred.

18                              **Conclusion**

19          Because the insured timely filed suit against Defendants within two years after the loss

20  occurred, and because the present action is based on a settlement Plaintiff made while the

21  insured's timely suit was ongoing against Defendants, Plaintiff's current action for contribution

22  is not barred by the two-year contractual suit limit in Defendants' policies. The present suit is

23  also not barred by Washington's three-year statute of limitations because, whether the cause of

24

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT RE UNTIMELY
FILINGS- 8

1    action is considered to accrue on the date Plaintiff paid the insured or the date judgment was

2    entered against Plaintiff's former parent company, this suit was timely filed in August 2011.

3    Therefore, Defendants' motion for summary judgment for untimely suit filings is DENIED.

4           The clerk is ordered to provide copies of this order to all counsel.

5           Dated this 29th day of October, 2012.

6

7

8                                                        Marsha J. Pechman
9                                                        United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT RE UNTIMELY
FILINGS- 9