UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOUSTON GENERAL INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> FARMINGTON CASUALTY CO. and ST. PAUL FIRE & MARINE INSURANCE CO., <br><br> Defendants. | CASE NO. C11-2093MJP <br><br> ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on the parties' cross motions for summary judgment (Dkt. Nos. 74, 93). Having reviewed the motions, the opposition briefs (Dkt. Nos. 114, 116), the reply briefs (Dkt. Nos. 120, 121), and all related filings, the Court DENIES both motions for summary judgment. However, because both parties assert that Defendant Farmington Casualty Co. should be dismissed, the Court DISMISSES Defendant Farmington from this case.

**Background**

This case is a claim for contribution by one property insurer, Plaintiff Houston General Insurance Company ("Houston"), against two other property insurers, Defendants Farmington Casualty Company ("Farmington") and St. Paul Fire & Marine Insurance Company ("St. Paul"). (Dkt. No. 59 at 1.) The parties to this action provided property insurance policies to the Lakewest Home Owners Association ("Lakewest"), covering the Lakewest Condominium in Seattle. (Id. at 2.) In 2005, Lakewest discovered that the deck framing in certain locations of its building was extremely damaged due to hidden decay. (Id. at 3.) Neither Farmington, Traders, nor St. Paul accepted coverage. (Id.)

On Oct. 18, 2007, Lakewest obtained a default judgment against Plaintiff's parent company, Tokio, for its alleged liability under the Traders policies. (Id.) The total judgment was more than $7.5 million, representing the full cost to repair all damage to the Lakewest Condominium, plus attorney fees. (Id.) When Tokio learned of the default judgment, it appeared and filed a motion to vacate on Dec. 1, 2008. (Id.) On Dec. 11, 2008, King County Superior Court vacated the default judgment. (Id. at 4.) The judgment was not reinstated until June 1, 2010, in an unpublished opinion by the Washington Court of Appeals. (Id.; see Lakewest Condo. Owners Assoc. v. Tokio Marine & Nichido Fire Ins. Co., Ltd., 156 Wn. App. 1016 (June 1, 2010).)

On Sept. 15, 2010, while an appeal of the court's reinstatement of the default judgment was pending, Tokio settled with Lakewest for a final amount of $6 million. Because Houston was the entity liable under the Traders policies, not Tokio, Houston paid the entire $6 million settlement to Lakewest on Oct. 14, 2010. (Id. at 4.) Plaintiff files the present contribution action to recover from Farmington and St. Paul.

1    Each insurance company provided coverage for a different period of time. Defendant
2    Farmington issued property insurance to Lakewest for the period March 22, 1992, to March 22,
3    1993. (Dkt. No. 57 at 2.) Defendant St. Paul issued property insurance to Lakewest for the period
4    Oct. 1, 1995 to Oct. 1, 2000. (Id.) Plaintiff Houston, through its then-subsidiary, Traders &
5    Pacific Insurance Company ("Traders"), insured Lakewest from March 22, 1993 to Oct. 1, 1994.
6    (Dkt. No. 59 at 2.)

7    In Defendants' motion for summary judgment, they assert that, because the Traders
8    policy and the Farmington policy both covered only damage "commencing" during the policy
9    period, and because damage cannot commence in one policy period and also in another, there is
10   no common obligation between the two parties sufficient to support a contribution claim. (Dkt.
11   No. 93 at 1.) Defendants also assert that they should both be granted summary judgment because
12   Plaintiff's mathematical decay model is insufficient to prove the existence and amount of
13   "collapse" damage during each party's respective policy period. (Id.) In its motion for summary
14   judgment, Plaintiff asserts that there is no genuine issue of material fact that at least a minute
15   amount of damage did exist during the St. Paul policy periods, and that under Washington law,
16   St. Paul is liable for an amount to be determined by the Other Insurance clauses in the two
17   policies. (Dkt. No. 74 at 13.) Plaintiff asserts that the language in the Farmington policy is
18   irrelevant because the Farmington policy is excess over the Traders and St. Paul policies, which
19   together are sufficient to cover the loss. (Id. at 17.)

20                                    **Discussion**

21   A. <u>Legal Standard</u>

22   Federal Rule 56 states the court shall grant summary judgment if the movant shows there
23   is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
24   law. Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of

demonstrating the absence of a genuine issue of fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). On a motion for summary judgment, all reasonable inferences are drawn in favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002). A federal court sitting in diversity applies the substantive law of the state. Albano v. Shea Homes Ltd. P'ship, 634 F.3d 524, 530 (9th Cir. 2011.)

B. Defendants' Motion for Summary Judgment

Defendants ask the Court to enter summary judgment in their favor because the testimony of Plaintiff's experts is insufficient to prove the existence and amount of collapse damage during each party's respective policy period. (Dkt. No. 93 at 1.) The Court already considered and rejected this argument in its order denying Defendants' motion to exclude Plaintiff's expert testimony. (Dkt. No. 135.) In that order, the Court held that "[t]he fact that the Edmonds/Dunham model can only estimate a range of when decay may have begun or reached a level sufficient to cause structural impairment does not make it irrelevant." (Id. at 7.)

While the testimony of Defendants' experts does not establish the precise time that "collapse" commenced, it "is helpful in determining the relative likelihood that decay began or intensified at a certain time." (Id. at 8.) While neither party can say with absolute precision when decay began or reached certain levels, each side presents evidence and expert testimony that could support a factual finding it is more likely than not that rot or structural impairment began during certain periods. (Id.) Summary judgment is not appropriate.

C. Plaintiff's Motion for Summary Judgment

Because fact issues exist regarding the timing and extent of collapse, Plaintiff's motion for summary judgment is also denied. The bulk of Plaintiff's argument for summary judgment is

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 4

based on a statement by Defendant St. Paul's expert, Dr. Barry Goodell, acknowledging that advanced decay existed in 1996, during the St. Paul policy period. (Dkt. No. 74 at 14.) Plaintiff asserts that Defendant St. Paul's expert "testified that some advanced decay equal to SSI existed at the Lakewest Condominium during the St. Paul policy periods." (Id.) Therefore, Plaintiff argues, "there is no genuine issue of material fact that at least a 'minute' amount of the loss and damage occurred during the St. Paul policy periods." (Id.)

However, Defendants explain in their response brief that Dr. Goodell's testimony was based on a mistaken belief that a record existed from 1996 showing some advanced decay. (Dkt. No. 114 at 7.) Dr. Goodell explains: "I made the statement in my deposition because it was my impression at the time that there was a record (photograph or document) dated from 1996 demonstrating the existence of advanced decay which had been found but not repaired. . . . If such a record does not exist, then the statement in my deposition is wrong." (Id. at 8.) Plaintiff objects in its reply that "Only now, as part of St. Paul's opposition to this motion, did Dr. Goodell see fit to disclaim his testimony." (Dkt. No. 121 at 3.) But the bottom line is that Dr. Goodell does disclaim the testimony, so a fact dispute exists.

Defendants also show that a number of other fact issues exist that preclude entry of summary judgment. First, they raise the issue of whether the amount of the settlement was reasonable given Plaintiff's limited coverage period. (Dkt. No. 114 at 12.) Defendants explain: "Houston just submits the entire settlement amount at face value and ignores the crucial issue of whether the settlement was reasonable or not." (Id.) Second, Defendants assert that it is possible that the damage occurred during Plaintiff's policy, but then stopped during the St. Paul policy period, only being discovered later. (Id. at 18.) They explain: "[I]t is a physical fact that rot will only consume a limited portion of the wood before dying, and it thus is incorrect to assume that

if 'collapse' began during Traders' period, it continued to advance during St. Paul's 5 policy periods." (Id.) The progression of the rot and the time at which it advanced to "collapse" levels is a question of fact, and summary judgment is therefore inappropriate.

In the context of insurance law, contribution allows an insurer to recover from another insurer where both are independently obligated to indemnify or defend the same loss. Mut. of Enumclaw Ins. Co. v. USF Ins. Co., 164 Wn.2d 411, 419 (2008). "In deciding whether one insurer is liable for equitable contribution to another, the inquiry is whether the nonparticipating coinsurer had a legal obligation . . . to provide a defense or indemnity coverage for the . . . claim or action prior to the date of settlement." Id. at 420 (citing Safeco Ins. Co. of Am. V. Superior Court, 140 Cal. App. 4th 874, 879 (2006). Here, the fact that Plaintiff's settlement with Lakewest resulted from a default judgment entered against Plaintiff's parent company does not prove that no common legal obligation existed. (Dkt. No. 114 at 11.) While the circumstances of Plaintiff's settlement with Lakewest may go to the amount of the common obligation, or whether Plaintiff acted as a volunteer, the Court rejects Defendants' argument that the existence of a default judgment preceding settlement automatically renders a plaintiff to have "dirtied its hands" making it ineligible to bring a contribution action. Dkt. No. 114 at 12; see Hartford Ins. Co. v. Ohio Cas. Ins. Co., 145 Wn. App. 765, 773 (2008).  While default judgment may often be a sanction, see Hester v. Vision Airlines, Inc., 687 F.3d 1162, 1169 (9th Cir. 2012), Defendants cite no authority stating that entry of a default judgment prior to settlement eliminates an insurer's right to bring a contribution action.

Summary judgment is inappropriate here because each of these issues involves genuine issues of material fact. See Celotex, 477 U.S. at 323; Schmidt v. Cornerstone Invest., 115 Wn.2d 148, 161 (1990) (an inquiry into a settlement's reasonableness "necessarily involves factual

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 6

determinations"). The reasonableness of the settlement is an issue for the Court, while the existence of collapse during Defendant St. Paul's policy period, and therefore the existence of a common liability, is a fact issue for the jury to decide. See Glover v. Tacoma General Hospital, 98 Wn.2d 708 (1983).

**Conclusion**

For the foregoing reasons, the Court DENIES both motions for summary judgment. When the evidence is viewed in the light most favorable to the non-moving party, neither party has established there is no genuine issue of material fact for trial.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 17th day of December, 2012.

Marsha J. Pechman
United States District Judge