UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOUSTON GENERAL INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> ST. PAUL FIRE & MARINE INSURANCE CO., <br><br> Defendant. | CASE NO. C11-2093MJP <br><br> FINDINGS OF FACT AND CONCLUSIONS OF LAW |

This matter came before the Court for trial commencing on March 25, 2013. As established by pretrial motion and order of the Court (Dkt. No. 166), the factual issues regarding the existence of collapse during Defendant's policy periods, and therefore the existence of a common liability, were tried to a jury. The Court also retained the jury in an advisory capacity to determine the existence of collapse during Plaintiff's policy periods. Following the conclusion of the jury trial, the Court held a bench trial to determine the legal issues of the reasonableness of the settlement with the insured and the terms of any equitable contribution ordered by the Court

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 1

1  Plaintiff Houston General Insurance Company was represented by T. Daniel Heffernan
2  and Devon M. Thurtle Anderson of Heffernan Law Group PLLC. Defendant St. Paul Fire &
3  Marine Insurance Company was represented by James T. Derrig of James T. Derrig, Attorney at
4  Law PLLC. Defendant Farming Casualty Company was dismissed from the action upon a prior
5  motion for summary judgment. (Dkt. No. 136.)

6  On March 28, the jury returned a verdict finding that collapse, due to decay, occurred
7  during three policy periods of Defendant St. Paul Fire & Marine Insurance Company, effective
8  October 1, 1997, to October 1, 2000. (Dkt. No. 204.) As to the advisory verdict, the jury did not
9  find that collapse, due to decay, commenced during Plaintiff's two policy periods from March
10 34, 1993 to October 1, 1994. (Id.) The Court considered the evidence presented at trial, the
11 exhibits admitted into evidence, and the arguments of counsel. The Court has weighed the
12 testimony, exhibits, and evidence using the required "preponderance of the evidence" standard.
13 Now the Court, being fully advised in the premises, makes additional Findings of Fact and
14 Conclusions of Law as follows:

**FINDINGS OF FACT**

16  1.  Houston General Insurance Company ("Houston") is a Texas corporation maintaining its
17      principal offices in Massachusetts.
18  2.  Saint Paul Fire & Marine Insurance Company ("St. Paul") is a Minnesota corporation
19      maintaining its principal offices in Connecticut.
20  3.  The amount in controversy in this matter exceeds $75,000, exclusive of interest and costs.
21  4.  The Lakewest Condominium is located in Seattle, Washington, and includes three
22      condominium buildings.

5. Traders & Pacific Insurance Company ("Traders") issued property insurance to the Lakewest Condominium Homeowners Association ("Lakewest") from March 22, 1993 to October 1, 1994. At the time, Traders was a wholly-owned subsidiary of Houston, which in turn was a subsidiary of Tokio Marine and Fire Insurance Company Limited ("Tokio"). In 1998, Tokio sold Houston, and Traders remained a subsidiary of Houston. When Tokio sold Houston, it did not retain any liability under the Traders policies.

6. St. Paul issued property insurance to Lakewest for five consecutive one-year periods from October 1, 1995 to October 1, 2000.

7. On or about August 2006, Lakewest presented claims to certain property insurers issuing policies from 1989 through 2006, including St. Paul.

8. At that time, none of the insurers accepted coverage for the claims.

9. On May 21, 2007, Lakewest filed suit against its insurers, including St. Paul and Tokio.

10. On October 18, 2007, Lakewest obtained a default judgment against Tokio, based on liability under the Traders policies. The total default judgment was $7,525,530.15. According to the judgment documents, the judgment amount consisted of:

    a. $4,843,219 to locate and repair all risks of direct physical loss at the building

    b. Costs and expenses incurred in conducting a thorough investigation of the damage at the condominium totaling $48,375.60

    c. Attorneys fees of $2,633,935.55

11. In June 2008, Lakewest entered into a construction contract to repair the Lakewest Condominium buildings. Those repairs were completed by August 2009.

12. Tokio moved to vacate the default judgment. The trial court did so on December 12, 2008.

13. Lakewest appealed. On June 1, 2010, the Washington Court of Appeals issued an unpublished opinion reversing the superior court's order and reinstating the default judgment.

14. Tokio petitioned the Washington Supreme Court for review.

15. On September 15, 2010, while the petition was pending, Tokio settled with Lakewest for $6 million.

16. At the time of the settlement, Tokio's potential liability to Lakewest included:

    a. The principal judgment amount of $7,525,530.15

    b. $135,000, representing Lakewest's attorneys fees and costs on appeal

    c. Approximately $2,615,000 of post-judgment interest

17. On October 14, 2010, Houston paid the $6 million settlement amount to Lakewest based on Houston's liability under the Traders policies.

18. On August 5, 2011, Houston brought this suit seeking contribution from St. Paul on the basis that during one or more St. Paul policy periods, the Lakewest property suffered damage consisting of collapse due to hidden decay.

19. Houston later settled with two other insurers who provided excess insurance to Lakewest: Safeco and Truck Insurance Exchange.

20. Houston settled with Safeco for a total sum of $87,000.

21. Houston settled with Truck Insurance Exchange for a total sum of $65,000

22. On March 28, 2013, the jury returned a verdict finding that Houston had carried its burden of proving that collapse due to hidden decay occurred during three of St. Paul's policy periods, from October 1, 1997 to October 1, 2000.

23. Lakewest's actual cost to repair damage from substantial impairment of structural integrity ("SSI") was $4,543,727.15. This includes:

   a. $4,259,025.15 paid to Charter Construction

   b. $32,252.01 paid to OAC Services

   c. $252,450.00 paid to Morrison Hershfield

24. Each of the St. Paul policies includes an Other Insurance clause stating: "When this agreement and other collectible property insurance both apply to a loss, we'll pay only our share of the loss. Our share will be the same proportion of the loss that our limit of coverage bears to the total of all available limits."

25. The available limits for purposes of this action are the sum of the limits of the two Traders policies ($11,100,000), plus the sum of the limits of the three St. Paul policies identified in the jury verdict ($19,344,860). The total limit of coverage is: $30,444,860.00

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this case.

2. Even though the jury did not find by a preponderance of the evidence that collapse, due to decay, commenced during any of Houston's policy periods, Houston was not a volunteer because it settled under legitimate threat of civil suit.

3. Houston and St. Paul share a common liability for collapse due to hidden decay of the Lakewest Condominium.

4. The settlement of September 15, 2010 is reasonable, with the exception of the $2,100,000 in Olympic Steamship attorney's fees, which were solely the responsibility of Tokio as a result of the default.

5. It was reasonable for Houston to pay the costs of repair that the insured had paid, excluding additional work not necessary to repair collapse.

6. Because there can be no right of contribution between primary and excess insurers, St. Paul is not entitled to any offset or other credit for settlements negotiated and obtained by Houston from excess insurers Safeco and Truck Insurance Exchange.

7. St. Paul is liable to Houston for equitable contribution of St. Paul's share of the actual cost to repair damage from SSI: $4,543,727.15.

8. Applying the Other Insurance clauses, St. Paul is liable for the proportion of the loss that St. Paul's limit of coverage ($19,344,860.00) bears to the total of all available limits ($30,444,860.00). This amounts to 63.54% of the cost of repair, or $2,887,113.48.

9. The amount identified in the preceding finding of fact was arrived at through the use of discretion and could not be determined by St. Paul prior to judgment.

10. The amount of contribution is not a liquidated sum and Houston is not entitled to prejudgment interest.

11. Houston is entitled to judgment in the amount of $2,887,113.48.

Plaintiff Houston General Insurance Company is ordered to prepare a judgment commensurate with these findings and submit it to the Court for signature within seven days of the filing of these findings.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 17th day of April, 2013.

Marsha J. Pechman
United States District Judge

FINDINGS OF FACT AND CONCLUSIONS OF LAW- 6