UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOUSTON GENERAL INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> ST. PAUL FIRE & MARINE INSURANCE CO., <br><br> Defendant. | CASE NO. C11-2093MJP <br><br> ORDER ON ST. PAUL'S MOTION TO ALTER OR AMEND JUDGMENT |

This matter comes before the Court on the motion to alter or amend judgment filed by Defendant St. Paul Fire & Marine Insurance Co. (Dkt. No. 216.) Having reviewed the motion, the opposition filed by Plaintiff Houston General Insurance Co. (Dkt. No. 129), Defendant's reply (Dkt. No. 220), and the remaining record, the Court DENIES Defendant's motion.

**Background**

Defendant St. Paul Fire & Marine Insurance Co. ("St. Paul") brings this motion (Dkt. No. 216) attacking the judgment entered by the Court in this case on May 13, 2013 (Dkt. No. 214). In that judgment, the Court awarded $2,887,113.48 to Plaintiff Houston General Insurance Co.

("Houston"). (Id.) The judgment was based on the Findings of Fact and Conclusions of Law entered by the Court on April 17, 2013, after holding a three-day jury trial, followed by a bench trial. (See Dkt. Nos. 194, 197, 200, 201.) The jury trial addressed factual issues regarding the existence of collapse during Defendant's policy periods, and therefore the existence of a common liability. (Dkt. No. 210 at 1.) The Court also retained the jury in an advisory capacity to determine the existence of collapse during Plaintiff's policy periods. (Id.) The bench trial addressed the issues of the reasonableness of the September 15, 2010 settlement with the insured and the terms of any equitable contribution. (Id.)

After hearing the parties' evidence, the Court determined that the September 15, 2010 settlement was reasonable, with the exception of the $2,100,000 in attorney's fees. (Id. at 5.) The Court then concluded that St. Paul was liable to Houston for equitable contribution of St. Paul's share of the actual cost to repair damage from substantial impairment of structural integrity, $4,543,727.15. (Id. at 6.) The Court then applied the Other Insurance clauses of the policies at issue and held that St. Paul was liable for 63.54% of the cost of repair, or $2,887,113.48. (Id.)

In the present motion, St. Paul objects that the Court erred by calculating the contribution amount based on the full repair costs ($4,543,727.15), rather than the settlement amount less the Olympic Steamship attorney's fees ($3,899,558.51). (Dkt. No. 216 at 4.) St. Paul also objects that Houston received a double recovery from excess carriers Safeco Insurance Company of America ("Safeco") and Truck Insurance Exchange ("Truck"), because there is no evidence that the primary insurance policies were ever exhausted, so Truck and Safeco voluntarily paid "as if they were primary carriers." (Id. at 5.) Lastly, St. Paul objects that the Court incorrectly ordered contribution because it shared no common liability with Houston, because the settlement did not extinguish St. Paul's liability, and because Houston acted as a volunteer. (Id. at 8-12.)

**Discussion**

A. <u>Legal Standard</u>

Federal Rule 59(e) provides that a party may move to have a court amend its judgment within twenty-eight days after the entry of judgment. Fed. R. Civ. P. 59(e). Amending a judgment after its entry is "an extraordinary remedy which should be used sparingly." <u>McDowell v. Calderon</u>, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc) (per curiam). "In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." <u>Allstate Ins. Co. v. Herron</u>, 634 F.3d 1101, 1111 (9th Cir. 2011). Federal Rule 52(b) permits the Court to alter or amend its findings and conclusions for the same reasons. Fed. R. Civ. P. 52(b).

B. <u>Contribution Amount</u>

St. Paul's argument that the Court erred by using the cost of repair ($4,543,727.15), rather than the settlement amount less the attorney's fees ($3,899,558.51), is based on a misreading of the Court's Findings of Fact and Conclusions of Law. In Conclusion 4, the Court concluded that "[t]he settlement of September 15, 2012 is reasonable, with the exception of the $2,100,000 in <u>Olympic Steamship</u> attorney's fees, which were solely the responsibility of Tokio as a result of the default." (Dkt. No. 210 at 5.) St. Paul's motion places undue emphasis on the second half of this sentence, turning the Court's statement into a conclusion that the settlement was unreasonable, when that is not what the Court concluded. (<u>See</u> Dkt. No. 216 at 3.) In Conclusion 4, the Court concluded that the settlement was not unreasonable, but that, because it

1 represented more than the actual cost to repair the condominium, the actual cost to repair the
2 condominium was the correct basis for calculating St. Paul's liability.

3     Although Tokio's potential liability to Lakewest at the time of settlement included
4 attorney's fees and post-judgment interest, St. Paul failed to present evidence at trial that the $6
5 million settlement was anything other than an undifferentiated lump sum. (Dkt. No. 219 at 4.)
6 Federal Rule 59(e) is not an open invitation to present evidence that a party neglected to present
7 at trial. See Fed. R. Civ. P. 59(e), Allstate Ins. Co. v. Herron, 634 F.3d at 1111. St. Paul's motion
8 incorrectly relies on a Disbursement of Funds authorization, created after the settlement, to argue
9 the settlement payment was used to pay attorney's fees. (Dkt. No. 219 at 4.) But the fact that
10 Lakewest applied part of the settlement toward attorney fees is immaterial; it was Lakewest's
11 money to do with as it pleased. The final cost of repair was the correct basis for the contribution
12 calculation.

13   C.  Double Recovery

14     St. Paul also fails to show that Houston made a double recovery as a result of its ruling
15 that St. Paul is not entitled to an offset for Houston's $87,000 settlement with Safeco and its
16 $65,000 settlement with Truck. A non-settling insurer is only entitled to an offset credit if it is
17 able to show what part of the settlement was attributable to the claim it seeks to offset. See Puget
18 Sound Energy v. ALBA Gen. Ins. Co., 149 Wn.2d 135, 141 (2003). Here, St. Paul failed to
19 provide any evidence showing what the excess insurers' settlements represented. Additionally,
20 under Washington law, a primary insurer has no right to recover from an excess insurer. See
21 Fiscus Motor Freight v. Universal Sec. Ins. Co., 53 Wn. App. 777, 787-88 (1989). Although St.
22 Paul argues that Truck and Safeco "voluntarily paid as if they were primary carriers," St. Paul

23

24

fails to point to any authority suggesting that the method of payment is determinative on this issue. (Dkt. No. 216 at 5.)

D. Other Attacks on Contribution Order

St. Paul also fails to show that the Court erred in finding common liability, that Houston was not a volunteer, or that Houston's settlement was an improper basis for a contribution action.

First, St. Paul fails to offer any new evidence that undermines the Court's conclusion that Houston and St. Paul share a common liability for collapse due to hidden decay of the Lakewest Condominium. (Dkt. No. 210 at 5.) Although the jury did not find by a preponderance of the evidence that collapse commenced during the Houston insurance policy periods, this is insufficient to show that no common liability existed between Houston and St. Paul. (Dkt. No. 204.) The jury's finding that collapse commenced during the St. Paul policy periods, together with the Court's conclusion that Houston was not a volunteer because it settled under legitimate threat of civil suit, is sufficient to support a conclusion that Houston and St. Paul share a common liability. (Dkt. No. 204; Dkt. No. 210 at 5.)

Second, St. Paul also fails to show that Houston was a volunteer. St. Paul asserts that Houston's payment of repair costs was voluntary because it was made without legal obligation to Lakewest. (Dkt. No. 216 at 10.) St. Paul relies on two arguments: first, that the jury verdict somehow shows Houston was a volunteer, and, second, that the default judgment means there was no legal basis for coverage. (Id. at 10-12.) Neither of these arguments is new, and both are unpersuasive. "Whether one acts as a volunteer is determined in light of all surrounding circumstances[,]" and "[o]ne who settles under threat of civil suit is not a volunteer." Hartford Ins. Co. v. Ohio Cas. Co., 145 Wn. App. 765, 774 (2008). Here, the jury's verdict did not show that Houston was a volunteer; if anything, the jury's finding by a preponderance of the evidence

ORDER ON ST. PAUL'S MOTION TO ALTER OR
AMEND JUDGMENT- 5

1  that collapse occurred in the 1997-1998 term, just a few years after Houston's period, shows that

2  Houston was at real litigation risk. (Dkt. No. 204.) Additionally, the existence of a default

3  judgment does not indicate that there was no basis for coverage. As Houston points out, it was a

4  requirement of the settlement that Houston withdraw its petition for review before the

5  Washington Supreme Court. (Dkt. No. 219 at 6.) St. Paul shows no basis for the Court to alter its

6  conclusion that Houston was not a volunteer.

7        Lastly, St. Paul fails to show that the Court should alter its judgment because the Tokio-

8  Lakewest settlement did not discharge St. Paul's liability to Lakewest. Although the settlement

9  did not include language explicitly extinguishing St. Paul's liability, there is no doubt that was its

10 practical effect. First, the settlement represented a reasonable adjustment of Lakewest's loss, so

11 recovery from St. Paul would have represented an impermissible double recovery. (Dkt. No. 219

12 at 5.) Second, the settlement extinguished St. Paul's liability to Lakewest by assigning all of

13 Lakewest's rights arising from the claim to Houston. (Id.) The collateral source rule simply is not

14 applicable here. In addition to failing on its merits, this argument fails because a Rule 59(e)

15 motion is not the time to raise new legal arguments that could have been raised before. See

16 Allstate Ins. Co. v. Herron, 634 F.3d at 1111.

17 **Conclusion**

18       Because St. Paul fails to show any reason why the Court should amend its judgment, the

19 Court DENIES St. Paul's motion. The clerk is ordered to provide copies of this order to all

20 counsel.

21       Dated this 9th day of September, 2013.

22

23                                       Marsha J. Pechman

24                                       Chief United States District Judge

ORDER ON ST. PAUL'S MOTION TO ALTER OR
AMEND JUDGMENT- 7