UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOUSTON GENERAL INSURANCE COMPANY, | CASE NO. C11-2093 BJR |
| Plaintiff, | ORDER GRANTING MOTION TO EXCLUDE AND SUMMARY JUDGMENT |
| v. | |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, et al., | |
| Defendants. | |

I.    **INTRODUCTION**

This is an insurance contribution case wherein Plaintiff insurer ("Houston General") seeks a judgment against Defendant St. Paul Fire & Marine Insurance Company ("St. Paul")[1] for a portion of a settlement which it negotiated with one of its insureds (Lakewest Condominiums). Plaintiff's original complaint sought contributions from St. Paul based on policy periods running

---

[1] The other defendant, Farmington Casualty Co., was dismissed by stipulation in 2012.  (Dkt. No. 136.)

from March 23, 1993 to October 1, 1994 and from October 1, 1995 to October 1, 2000.  (Dkt. No. 1 at 4.)

Defendant seeks by this motion to exclude Plaintiff's expert testimony regarding when "collapse" occurred in the buildings and also seeks summary judgment of dismissal on the grounds that, without the testimony of its experts, Plaintiff cannot establish whether alleged "collapse" conditions observed in 2008 were present during St. Paul's policy periods.  Plaintiff opposes both requests.

Having reviewed the parties' arguments, the case law and relevant portions of the record, the Court will GRANT Defendant's motion to exclude the evidence and GRANT Defendant's motion to dismiss Plaintiff's case on summary judgment grounds.  The Court's reasoning follows.

II.     **BACKGROUND**

The merits of this case turn on the issue of whether any part of the condominium buildings "collapsed" during periods covered by Defendant's policies; the parties agree that "collapse" is generally defined as "substantial impairment of structural integrity," or "SSI."  There is no dispute that none of the buildings actually fell down; Plaintiff has acknowledged that it "is not making a claim for physical damage other than substantial impairment of structural integrity."  (Dkt. No. 254-3 at 3.)

Following denial of an earlier summary judgment motion (Dkt. No. 136), the original presiding judge, U.S. District Judge Marsha J. Pechman, empaneled a jury before whom the issue of "collapse" was tried.  The eyewitness observation of the damage to the structures occurred between 2005 and 2008 (*see* Dkt. No. 1, Complaint at ¶ 24); i.e., there was no direct evidence regarding the condition of the buildings during St. Paul's policy periods.  Plaintiff's evidence that the alleged "collapses" went back as far as the time periods covered by St. Paul consisted of a

1  mathematical model which Plaintiff asserted could calculate when decay in various components

2  ("members") of the building progressed to the point that it constituted "SSI." (Dkt. No 75, Exs. A-

3  B.)  In response, St. Paul presented testimony that "the timing model lacked a credible scientific

4  basis and that Houston's 'SSI' standard was overly broad because it focused on individual

5  structural components without considering their effect on overall structural integrity." (Dkt. No.

6  253, Motion at 4.)

7       The jury was instructed that "collapse" meant "substantial impairment of structural

8  integrity," without further elaboration.  (Dkt. No. 199-13.)  Following an early indication of

9  deadlock and two questions focused on the definition of "SSI," the jury returned a verdict which

10 stated:

11

12       **The Court submits the following questions to the jury. All jurors must be**

13 **unanimous as to each question and each subpart.**

14       QUESTION 1:       Did collapse, due to decay, commence during any of the

15 Houston policy periods?

16            a. March 23, 1993 to October 1, 1993?        ☐ YES        ☑ NO

17            b. October 1, 1993 to October 1, 1994?        ☐ YES        ☑ NO

18       QUESTION 2:       Did collapse, due to decay, occur during any of the following

19 Saint Paul policy periods?

20            a. October 1, 1995 to October 1, 1996?        ☐ YES        ☑ NO

21            b. October 1, 1996 to October 1, 1997?        ☐ YES        ☑ NO

22

23

24

ORDER GRANTING MOTION TO EXCLUDE AND SUMMARY JUDGMENT - 3

c. October 1, 1997 to October 1, 1998?    ☑ YES    ☐ NO

d. October 1, 1998 to October 1, 1999?    ☑ YES    ☐ NO

e. October 1, 1999 to October 1, 2000?    ☑ YES    ☐ NO

Dkt. No. 204.

On the basis of this verdict, Judge Pechman entered a judgment against St. Paul.  (Dkt. No. 214.)  Defendant appealed the jury's "collapse" findings; Plaintiff filed no cross-appeal on the jury's finding that there was no "collapse" prior to October 1997.  The Ninth Circuit reversed the portion of the verdict which found against St. Paul on the grounds that a later Washington Supreme Court decision[2] had clarified the definition of "substantial impairment of structural integrity" in a way which rendered the instructions to the jury in this case erroneous.  *See, Houston General Ins. Co. v. Farmington Cas. Co.,* 649 Fed.Appx, 605, 607-08 (2016).

In its appeal briefing, St. Paul argued that, while the adverse verdict on the policy periods from October 1, 1997 to October 1, 2000 sprang from reversible error, the verdict of "no collapse" prior to October 1, 1997 (which Houston General had not appealed) should remain untouched.  The Ninth Circuit agreed:

> We vacated the district court's judgment and remand for a new trial on "collapse" consistent with the definition of collapse provided in *Queen Anne*.  As noted by St. Paul, retrial is only necessary for the last three St. Paul policies in effect from October 1, 1997 to October 1, 2000.

649 Fed.Appx. at 608.

On remand, the parties have participated in further discovery.  Plaintiff Houston General has engaged new experts who have generated yet another mathematical model to calculate the

---

[2] *Queen Anne Park Homeowners Ass'n v. State Farm Fire and Casualty Co.*, 183 Wn.2d 485 (2015).

1    chronology of the alleged "collapses" in the structures at issue.  Plaintiff has identified new experts

2    in the fields of structural engineering, wood science and statistics.  (*See* Dkt. Nos. 260-262.)

3    Without exception, all of Plaintiff's experts identify a high percentage of building members in

4    Lakewest's structures as having been in a state of "SSI" during *or before* the period of the 1997 –

5    2000 St. Paul policies.  (*See* Dkt. No. 260, Decl. of Dunham, Ex. B at 4; Dkt. No. 261, Decl. of

6    Sampson, Ex. B at 6; Dkt. No. 262, Decl. of Winandy, Ex. B at 17.)

7         A summary of Plaintiff's experts' reports prepared by St. Paul (which Plaintiff does not

8    controvert) indicates that Houston General's evidence claims to establish:

9         • That four "collapses" had potentially taken place as early as 1985, with two

10             occurring no later than 1991; and

11        • That 22 of the 70 "SSI" conditions had unquestionably occurred before October 1,

12            1997.

13   Dkt. No. 254-11.  Additionally, Plaintiff's statistics expert testified that 52% of the members

14   probably reached SSI prior to October 1, 1997.  (Dkt. No. 254-12 at 5:11-14.) That same expert

15   testified that the data "overwhelmingly indicate[s]" that SSI began prior to 1997 in many members.

16   (*Id.* at 1:6-22.)  It is that evidence which St. Paul seeks to exclude and without which, Defendant

17   argues, Plaintiff has no evidence upon which to establish its case.

18        It is useful at this juncture to examine the language of the Ninth Circuit opinion which

19   reversed a portion of original verdict in this case and remanded the matter to this Court for further

20   proceedings.  The appellate court noted that "[t]he district court instructed the jury based on then-

21   existing Washington case law that 'collapse' meant 'substantial impairment of structural

22   integrity,'" but that subsequently the Washington Supreme Court had clarified the definition of

23

24

1  "collapse" in the *Queen Anne Park Homeowners*' case ("*Queen Anne*").  649 Fed.Appx. at 607.

2  The Ninth Circuit quoted the language of that opinion at length:

3      …"structural integrity" of a building means a building's ability to remain upright and
       "substantial impairment" means a severe impairment.  Taken together, "substantial
4      impairment" of "structural integrity" means an impairment so severe as to materially
       impair a building's ability to remain upright… [W]e conclude that "substantial impairment
5      of structural integrity" means the substantial impairment of the structural integrity of all or
       part of a building that renders all or part of the building unfit for its function or unsafe
6      and… means more than mere settling, cracking, shrinkage, bulging or expansion.

7  *Queen Anne*, 183 Wn.2d at 492.  There is no way to read this opinion other than creating a more

8  restrictive definition of "collapse" than that on which Judge Pechman crafted the jury instruction

9  in this case.  Based on the Washington Supreme Court's ruling, the Ninth Circuit found the jury

10 instruction on "collapse" given in this case to be "erroneous" and that "the error was not harmless."

11 649 Fed.Appx. at 608.  The Court refers again to the appellate court's closing comment that, "as

12 noted by St. Paul, retrial is only necessary for the last three St. Paul policies, in effect from October

13 1, 1997 through October 1, 2000."  *Id.*

14     III.   **LEGAL STANDARD**

15        Summary judgment is appropriate if the evidence, when viewed in the light most favorable

16 to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and

17 the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a); *see Celotex Corp. v.*

18 *Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The

19 court is "required to view the facts and draw reasonable inferences in the light most favorable to

20 the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

21        The moving party bears the initial burden of showing there is no genuine issue of material

22 fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the

23 moving party meets its burden, the burden shifts to the non-moving party to "make a showing

24

ORDER GRANTING MOTION TO EXCLUDE AND SUMMARY JUDGMENT - 6

1  sufficient to establish a genuine dispute of material fact regarding the existence of the essential

2  elements of his case that he must prove at trial." *Galen*, 477 F.3d at 658.

3  IV.  **DISCUSSION**

4  A.  Motion to Exclude

5  Defendant first seeks to characterize the evidence of Plaintiff's new experts as

6  inadmissible.  The crux of this argument is that the combined evidence offered by all three experts,

7  because it contradicts the prior jury verdict, violates the Seventh Amendment and contravenes the

8  holding of *Queen Anne.*

9  The Bill of Rights to the U.S. Constitution included an amendment which stated:

10  In Suits at common law, where the value in controversy shall exceed twenty dollars, the
    right of trial by jury shall be preserved, and *no fact tried by a jury, shall be otherwise*
11  *reexamined in any Court of the United States*, than according to the rules of the common
    law.
12

13  U.S. Const., amend. VII (emphasis supplied).   One of the questions before the Court is whether

14  the expert testimony proffered by Plaintiff, which includes evidence contradicting the unappealed

15  and unreversed portion of the jury verdict in this case, is subject to the prohibition on

16  reexamination embodied in the Seventh Amendment.

17  While there appear to be no cases directly on point, Defendant cites to several opinions

18  concerning analogous situations.  In *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 628

19  (9th Cir. 1999), the court found that bifurcation which permitted two different juries to examine

20  the same factual issue violated the Seventh Amendment. Similarly, a Delaware federal court (faced

21  with a request to bifurcate a case into liability and damage trials) ruled that

22  Two juries cannot decide factual questions that are common to both trials and which are
    essential to a verdict or an award.  Factual questions resolved by one jury which could be
23  reexamined by another jury, either directly or indirectly, violates [*sic*] the Seventh
    Amendment.
24

*Smith v. Alyeska Pipeline Service Co.,* 538 F.Supp. 977, 984 (D.Del. 1982).

Other Ninth Circuit precedent can be found in *EEOC v. Wal-Mart Stores, Inc.*, 35 Fed.Appx. 543 (9th Cir. 2002), where a liability question of intentional discrimination was initially resolved against the defendant, following which several punitive damages trials were held. In one of those subsequent trials, the district court allowed evidence to be introduced that amounted to a claim there had been no intentional discrimination. In reversing that verdict, the Ninth Circuit held:

> Therefore, the district court abused its discretion when it allowed Wal-Mart employees to testify to their version of events – a version which directly contradicts the first jury's finding of intentional discrimination. *See Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993).

*Id.* at 546 (footnote omitted).[3]

It is the finding of this Court that the evidence proffered by Plaintiff runs afoul of both the *Queen Anne* precedent and the restrictions imposed by the Seventh Amendment. Regarding the former, St. Paul's summary identifies (and Plaintiff does not dispute) four structural members whose conditions allegedly qualify for "collapsed" status as early as 1985 (at least 20 years before the condition was observed) and two that occurred no later than 1991 (14-17 years prior to observation). (Dkt. No. 254-11.) A standard this loose is not consistent with the *Queen Anne* definition of "substantial impairment of structural integrity" such that it "renders all or part of the building unfit for its function or unsafe." The *Queen Anne* court itself, remarking on a similar claim by its plaintiff, remarked that

> [t]he HOA has not pointed to any evidence that would allow a reasonable jury to find that parts of its condominiums "collapsed" over 17 years ago, given that the condominiums are

---

[3] *EEOC v. Wal-Mart* does not directly mention the Seventh Amendment, but the case which it cites – *Los Angeles Police Protective League* – is a case where reexamination was barred on a Seventh Amendment basis.

ORDER GRANTING MOTION TO EXCLUDE AND SUMMARY JUDGMENT - 8

still standing today.  It is simply implausible that some walls of its condominiums became "unfit for [their] function or unsafe" in or before 1998.

633 Fed.Appx at 417.  While all of Plaintiff's experts here claim to be employing the revised SSI standard announced in *Queen Anne*, the claim is not credible when viewed in this light.

Of even greater concern, however, is the fact that the model employed by Plaintiff's experts consistently yields results which purport to establish that over half of the conditions they have identified as "collapsed" occurred *before* October 1, 1997.  This flies directly in the face of the finding by the jury in this case that no "collapse" occurred from March 23, 1993 to October 1, 1994, or from October 1, 1995 to October 1, 1997, a finding which the Ninth Circuit specifically left undisturbed in remanding this matter back to this Court.  649 Fed.Appx. at 608.  This is an insurmountable Seventh Amendment violation.

To admit Plaintiff's evidence on retrial would be to permit its witnesses to testify that a factual question previously resolved by a jury in this case was decided wrongly.  Even the fact that such a conclusion might only be implied indirectly (i.e., where Plaintiff was not asking the second jury to overturn the finding of the first, merely utilizing a mathematical model which calls the first jury's finding into question) would not save Plaintiff from constitutional violation: as the Delaware federal court observed, "[f]actual questions resolved by one jury which could be reexamined by another jury, *either directly or indirectly*, violates [*sic*] the Seventh Amendment."  *Smith*, 538 F.Supp. at 984 (emphasis supplied).

Plaintiff's response to this position is to argue that all this Seventh Amendment precedent is inapplicable to its situation, distinguishable because in this case there has been an "intervening change in the law."  Without a single citation to precedent, Houston General asserts that "[w]here the law forming the basis of the jury's fact-finding was erroneous, Houston, just like St. Paul, is

1   entitled to a jury trial in which the correct rule of law regarding 'collapse' is applied *to all time*

2   *periods*." (Dkt. No. 258, Response at 15; emphasis supplied.)

3         Besides having no support in case law, this argument has no appeal in logic.  As mentioned

4   previously, the jury instruction on "collapse" was found to be erroneous because later

5   developments in the state law rendered it overbroad.  "Collapse" as defined by the *Queen Anne*

6   court is a narrower concept.  To accept Plaintiff's position would be to conclude that a condition

7   could constitute "SSI" under the more restricted *Queen Anne* definition but <u>not</u> "SSI" under the

8   broader jury instruction.

9         There is no question in the Court's mind that this is why the Ninth Circuit ruled that, on

10  remand, "retrial is only necessary for the last three St. Paul policies in effect from October 1, 1997

11  to October 1, 2000."  649 Fed.Appx. at 608.  There is no need for retrial of the other St. Paul

12  policies because what a jury found to be "no collapse" under the more inclusive (if erroneous)

13  instruction could not be found to be "collapse" under the more restrictive *Queen Anne* formulation

14  of the concept.  Legal precedent, logic *and* the Seventh Amendment preclude Plaintiff from

15  introducing evidence based on a model which produces a contrary result.

16        On this basis, the Court will GRANT Defendant's motion to exclude the evidence of

17  Plaintiff's experts on the grounds that it (1) violates the Seventh Amendment's bar to

18  reexamination and (2) cannot be reconciled with either the *Queen Anne* case or the Ninth Circuit's

19  mandate on remand.

20        B.  <u>Summary Judgment</u>

21        Turning to St. Paul's motion for summary judgment, the Court must determine whether,

22  absent the evidence of its experts, Houston General has sufficient evidence to establish a genuine

23  dispute of material fact regarding the essential elements of its case.

24

1    Plaintiff claims it does.  The insurer refers to "extensive eyewitness and expert testimony

2    and analysis demonstrating that 'collapse,' as defined in *Queen Anne*, occurred before and during

3    St. Paul's policy periods."  (Response at 17.)  Per the ruling above, Houston General's expert

4    testimony will not be admitted, and the company's briefing provides no citations indicating what

5    its "extensive eyewitness… testimony" consists of.  It does make reference to "additional factual

6    evidence" in the form of "[m]aintenance and repair records from 1996 and 1997."  (*Id.* at 17-18.)

7    But the citation source for that evidence is (1) Paragraphs 3 – 5 of the declaration of Plaintiff's

8    structural engineering expert, which make no reference to maintenance and repair records from

9    any period; and (2) the structural engineer's report attached to that declaration, which contains a

10   single reference to a 1996 homeowners' association log of "Maintco deck repair activities" but

11   does not reproduce that log in whole or in part nor refer to it any further.[4]  (Dkt. No. 260-2, Decl.

12   of Dunham, Ex. B at 2.)

13   Additionally, Plaintiff refers to "[p]hotographs and eye witness testimony from the

14   multimillion dollar structural and stucco cladding repairs of the Lakewest buildings in 2008,

15   which… also supports a finding of 'collapse' under *Queen Anne*" (*Id.* at 18), but of course evidence

16   regarding the condition of the structures in 2008 is not evidence of the condition of the structures

17   during the period in which St. Paul insured them.

18   Plaintiff also alleges that "even St. Paul's own experts testified under oath at their

19   depositions regarding the existence of … impairment [consistent with the *Queen Anne* definition],

20   including before and during the period of the St. Paul policies."  (*Id.*)  The reproduced testimony

21   of St. Paul's structural engineer (*see* Response at 7-8) establishes only that, based on photographs

22

23   ───────────────

24   [4] Even if the 1996 log were actually included as evidence, it concerns a time period which, under the Ninth Circuit remand, is outside the scope of any potential retrial.

ORDER GRANTING MOTION TO EXCLUDE AND SUMMARY JUDGMENT - 11

1    taken in 2008, he agreed that four of the members met *his* definition of "SSI." This establishes

2    nothing as regards the condition of the structure during the time periods at issue.

3         The cited testimony of St. Paul's statistician (*Id.* at 8) is similarly unilluminating. The

4    expert is asked whether "it's possible that all SSI occurred, due to decay, in the first five years of

5    the life of the building; in other words, by 1990…?" and he answers in the affirmative. This

6    evidence does not help Plaintiff to establish a genuine dispute of material *fact*. First, the witness

7    is a mathematician and Plaintiff makes no showing he is qualified to speak authoritatively on the

8    process of wood decay in the context of the *Queen Anne* definition of "collapse." Second, as is

9    made clear in further testimony from that same deposition cited by Defendant (*see* Dkt. No. 266,

10   Reply at 12), the statistician is testifying regarding an "illustrative exhibit" of a theoretical model,

11   which is by definition not a piece of substantive evidence which can conclusively establish a fact.

12        Finally, concerning the testimony of Defendant's wood science expert, Plaintiff attempts

13   to support its case by citations to a deposition which occurred in 2012 (*see* Response at 9-11),

14   when the parties were operating on a legal definition of "collapse" which was later invalidated on

15   appeal. Testimony drawn from that time is ineffective in establishing whether there was a "*Queen*

16   *Anne*-style collapse" during the policy period which is back before the Court on remand.

17        In short, Plaintiff has not succeeded in coming forth with evidence above and beyond that

18   provided by its experts which will suffice to create the genuine dispute of material fact it must

19   produce to survive summary judgment. Plaintiff has failed to convince the Court that, without the

20   testimony of its experts, it can come forth with any evidence which would satisfy the definition of

21   "collapse" as enunciated by the Washington Supreme Court in *Queen Anne*. On that basis,

22   summary judgment in favor of Defendant will be GRANTED and the case dismissed with

23   prejudice.

24

1      C.  <u>Plaintiff's Surreply: Motion to Strike</u>

2       In response to Defendant's reply briefing, Plaintiff filed a Surreply to Strike New Evidence.

3   (Dkt. No. 271.)  In it, Plaintiff complained that St. Paul's reply had improperly proffered new

4   evidence and argument which should be stricken.

5       Houston General first complains about Defendant's use of the testimony of Plaintiff's

6   structural engineer to support its "new argument that Houston has failed to identify 'a single

7   condition… [that] constitutes 'SSI' [under *Queen Anne*]… but would *not* have been 'SSI' under

8   the [prior] jury instruction."  (Dkt. No. 271, Surreply at 5.)  In fact, what Plaintiff characterizes as

9   a "new argument" is simply Defendant's response to Plaintiff's assertion that there has been an

10  "intervening change in law" which permitted Plaintiff to essentially reargue the existence of

11  "collapse" during and before all the periods in which St. Paul insured the Lakewest structures.  St.

12  Paul was merely making the point that the "intervening change" was a narrowing of the previously

13  existing law and, on that basis, Plaintiff was not free to argue that what did not qualify as "SSI"

14  under the earlier, broader articulation of that concept would somehow qualify as "SSI" under the

15  newer, narrower law.  The Court agrees and sees nothing improper in the evidence offered to make

16  that responsive point.

17      Similarly, Plaintiff's complaint that Defendant's reply briefing introduced "new deposition

18  testimony of its experts to support an argument regarding the existence and timing of collapse"

19  (*Id.*) is a futile attempt to mischaracterize what is in fact nothing more than a response to Houston

20  General's argument that St. Paul's own experts were in agreement with Plaintiff's position.

21  Defendant is entitled to introduce admissible evidence to rebut that assertion and that is all it did

22  in this instance.

23

24

1    Finally, Plaintiff moves to strike exhibits submitted and quoted in the reply brief which

2    originally came from the structural engineer in the *Queen Anne* case.  The evidence was introduced

3    to corroborate an observation made by the *Queen Anne* court; namely, that under the new definition

4    of "collapse," conditions which existed 17 years ago in a building which is still standing will not

5    suffice to meet the requirement.  Since the point was adequately made in the opinion itself, the

6    Court will strike the declaration and exhibits from the *Queen Anne* structural engineer.  This has

7    no effect on the outcome reflected in this order.

8

9    V.    **CONCLUSION**

10    Plaintiff's expert testimony cannot be admitted without violating the holding of the

11    Washington Supreme Court in *Queen Anne* and the Seventh Amendment bar against

12    reexamination.  On that basis, it must be excluded.  Without that evidence, Plaintiff cannot

13    establish the material facts required to sustain its burden of proof.  On that basis, Defendant's

14    motion for summary judgment will be granted and the case dismissed with prejudice.

15

16    The clerk is ordered to provide copies of this order to all counsel.

17    Dated March 1, 2017.

18

19

20    _____
     Barbara Jacobs Rothstein
21    U.S. District Court Judge

22

23

24

ORDER GRANTING MOTION TO EXCLUDE AND SUMMARY JUDGMENT - 14